## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

ELLAINA T. DAVIS                                                        CIVIL ACTION

VERSUS

                                                      NO. 21-480-SDD-RLB

COMMISSIONER OF SOCIAL SECURITY

## NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on January 18, 2023.

                                                      _____
                                                      **RICHARD L. BOURGEOIS, JR.**
                                                      **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ELLAINA T. DAVIS | CIVIL ACTION |
| VERSUS | |
| COMMISSIONER OF SOCIAL SECURITY | NO. 21-480-SDD-RLB |

## REPORT AND RECOMMENDATION

Ellaina Davis (Plaintiff) seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g). (R. Doc. 1). Having found all the procedural prerequisites met (Tr. 1-5), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…").

For the reasons given below, the Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED,** and this matter be **DISMISSED with prejudice**.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for supplemental security income on July 27, 2018, alleging that she became disabled on December 30, 2017, due to her bipolar disorder, depression, and back injuries. (Tr. 261, 295). Plaintiff's application for benefits was initially denied by the Social Security Administration on November 8, 2018. (Tr. 139). Thereafter, Plaintiff filed a written request for a hearing. (*See* Tr. 149). An Administrative Law Judge ("ALJ") held a hearing on August 8, 2019, (Tr. 36-67), after which he issued an unfavorable decision on September 4, 2019. (Tr. 114-130).

2

On September 13, 2019, Plaintiff filed a Discrimination Complaint, alleging that the ALJ discriminated against her because of her race, disability, hair appearance, cultural food preference, and religion. (Tr. 197, 200). On September 20, 2019, Plaintiff filed a Request for Review of Hearing Decision, alleging that the ALJ's decision was contrary to law and fact. (Tr. 210).

On June 18, 2020, the Appeals Council remanded the matter to the ALJ. (Tr. 135). The Appeals Council found that the ALJ failed to admit evidence from Our Lady of the Lake Regional Medical Center that was submitted five days before the scheduled hearing, which was in violation of 20 C.F.R. § 416.1435. (Tr. 136).

On November 12, 2020, the ALJ conducted a second hearing, after which he issued an unfavorable ruling on December 16, 2020. (Tr. 7, 68). On remand, the ALJ found that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act (the "Act"). (Tr. 130). The ALJ reasoned that the medical evidence established that Plaintiff suffers from severe obesity and cervical and thoracic degenerative disc disease. (Tr. 13). Plaintiff's impairments, however, do not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404 Subpart P, Appendix 1. (Tr. 16). The ALJ further found that Plaintiff's medically determinable mental impairments do not cause more than a minimal limitation on her ability to perform basic mental work, and they are therefore non-severe. (Tr. 13).

After considering the record, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 416.967(b), except Plaintiff can occasionally reach overhead with the bilateral upper extremities. (Tr. 17). At the hearing, the vocational expert testified that Plaintiff could perform her past relevant work ("PRW") as a cook. (Tr. 22). Accordingly, the ALJ concluded that Plaintiff is able to engage in substantial gainful activity, and she is therefore, not disabled.

Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on June 16, 2021. (Tr. 1-6). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.     STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether there is substantial evidence to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as less than a preponderance but "more than a mere scintilla." *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir. 1994). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan,* 895 F.2d at 1022. The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (internal quotations omitted). The Court may not reweigh the evidence or try the issues *de novo,* nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler,* 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000) (quoting 42 U.S.C. § 405 (g)). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the

4

correct legal principles were followed, it is grounds for reversal. *See Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

### III.    ALJ'S DETERMINATION

To qualify for benefits, the claimant must establish that she is disabled within the meaning of the Act. *Herron v. Bowen,* 788 F.2d 1127, 1131 (5th Cir.1986) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan,* 914 F.2d at 618.

The Commissioner (through an ALJ) applies a five-step sequential analysis to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits [their] physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving that he or she is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps, then the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists that the claimant can perform, the claimant is given the

chance to prove that he or she cannot, in fact, perform that work. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

Here, the ALJ made the following determinations:

1. Plaintiff has not engaged in substantial gainful activity since July 24, 2018, the application date. 20 C.F.R. § 416.971 *et seq*.

2. Plaintiff has the following severe impairments: obesity and cervical and thoracic degenerative disc disease. 20 C.F.R. § 416.920(c).

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d), 416.925, and 416.926.

4. After careful consideration of the entire record, Plaintiff has the residual functional capacity to perform light work as define in 20 C.F.R. § 416.967(b) except she can occasionally reach overhead with the bilateral upper extremities.

5. Plaintiff is capable of performing past relevant work as a cook. This work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. 20 C.F.R. § 416.965.

6. Plaintiff has not been under a disability, as defined in the Act, since July 24, 2018, the date the application was filed. 20 C.F.R. § 416.920(f).

## IV. DISCUSSION

Plaintiff argues that the "ALJ failed to support with substantial evidence his assessment of the mental health evidence, resulting in errors in the Step Two analysis, in the opinion evidence analysis, and in formulating the RFC." (R. Doc. 11 at 1). Plaintiff's assignment of error concerns the ALJ's determination of the severity of Plaintiff's impairments and how that determination affected the subsequent RFC.

At step two, the claimant must prove that her impairment is "severe." An "impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (internal citations omitted). The claimant must show that her impairment is severe by showing

6

that it "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The claimant must "make a de minimis showing." Id. (internal citations omitted).

Plaintiff's main argument pertains to the ALJ's application of 20 C.F.R. §§ 404.1520c and 416.920c, which governs the factors and ALJ must consider when deciding whether, and to what extent, to accept medical opinions. Under these sections, the ALJ is not required "to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion […] including those from [Plaintiff's] medical sources." 20 C.F.R. § 416.920c(a). Supportability and consistency are the most important factors to consider when evaluating the persuasiveness of medical opinions. Id. With respect to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or medical opinion(s) […], the more persuasive the medical opinions […] will be." 20 C.F.R. § 416.920c(c)(1). Likewise, the "more consistent a medical opinion(s) […] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) […] will be." 20 C.F.R. § 416.920c(c)(2). Other factors include, but are not limited to, relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and specialization. 20 C.F.R. § 416.920c(c)(3)-(5). "Only if the ALJ finds that there are two or more medical opinions or prior administrative medical findings about the same issue that are both equally well-supported and consistent with the record but are not exactly the same, must the ALJ articulate consideration of the (c)(3) through (c)(5)" factors. *Governor v. Commission of Social Security*, No. 20-54-BAJ-EWD, 2021 WL 1151580, at *7 (M.D. La. March 2, 2021).

The guidelines provide that the ALJ will articulate how persuasive he finds "all of the medical opinions and all prior administrative medical findings in [the] case." 20 C.F.R. § 404.1520c(b). The ALJ must explain how he "considered the supportability and consistency

7

factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision." 20 C.F.R. § 404.1520c(b)(2).

Here, the ALJ found that the opinions of Dr. Sternes and Dr. Scott were unpersuasive, while finding the opinion of Dr. Wood to be persuasive and consistent with the medical evidence. In so finding, the ALJ provided:

> Julia Wood, Ph.D., the State Agency psychological consultant at the initial level, opined that the claimant exhibited no limitation in her ability to adapt or manage herself and mild limitations in all other areas of mental functioning. I find that this opinion is corroborated by the medical evidence of record. Following the requirements in 20 CFR 416.920c(b), I find that Dr. Wood's opinion is persuasive and consistent with the objective medical evidence of record, which is supported by her review of the evidence citing the claimant's normal mood and affect and relaxed states, intact associations, logical thinking, normal speech, appropriate fund of knowledge, no signs of inattentiveness or ideates, and treatment for major depressive disorder. The limitations opined by Dr. Wood are reasonably consistent with and supported by the nature and scope of treatment received by the claimant, which indicates consistently normal mental status examination findings and improvement with her symptoms when compliant with her medication and treatment regimen.

> The "Medical Source Statement" completed by the claimant's therapist, Catherine C. Scott, LCSW, and the extent of limitations provided within it are not persuasive nor are they supported by the nature and scope of treatment, objective findings, or State Agency opinions. While the "none-to-mild" limitation regarding the claimant's activities of daily living is supported by the claimant's self-reported abilities to dress herself, bathe herself, perform household chores, cook for herself, run errands, shop, do laundry, and drive, the other "extreme" and marked limitations opined by Mrs. Scott are not support by or consistent with the claimant's treatment record, which consistently noted normal mental status examination findings and stable symptoms. Further, Mrs. Scott's opinion regarding the claimant's inability to work is not persuasive nor is it supported by the nature and scope of treatment, objective findings, or State Agency opinion and is an issue reserved to the Commissioner.

> I find that the testimony of Dr. Sternes, the impartial medical expert who testified during the hearing, is only partially persuasive and consistent with the claimant's treatment record. Dr. Sternes opined that the claimant's alleged mental impairment met the listing 12.04 paragraph C criteria, but Dr. Sternes did not believe the claimant met the paragraph B criteria for listing 12.04. While I find that Dr. Sternes opinion regarding the claimant's paragraph B criteria limitations is partially persuasive, I find that his opinion is not completely consistent with or supported by the developed record, and does not take into account the claimant's

8

frequently normal mental status examination findings. As such, I find that no more than mild limitations exist for the claimant, as discussed herein, and that her alleged mental impairments are nonsevere and do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities.

(Tr. 21-22).

As set forth above, in reviewing the Commissioner's determination, the Court considers only whether the Commissioner applied the proper legal standards and whether substantial evidence in the record supports the decision to deny benefits. The Court is aware that "no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (internal quotations omitted). The Court may not reweigh the evidence or try the issues *de novo,* nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler,* 750 F.2d 391, 392 (5th Cir. 1985).

There is no allegation that the incorrect legal standards were cited or applied by the ALJ. In addition, it is clear from the ALJ's opinion that he considered and evaluated the record as a whole and specifically considered the opinions of Dr. Wood, Ms. Scott and Dr. Sternes.

Plaintiff asserts, however, that the ALJ's failure "rests on an improper evaluation both of the three opinions of record" and should have found the mental impairments severe and included RFC limitations "in accordance with the opinions of Ms. Scott and Dr. Sternes," and contrary to the opinion of Dr. Wood. The question is whether substantial evidence supports the ALJ's determination.

Dr. Wood opined, when considering listing 12.04, that a "medically determinable impairment is present that does not precisely satisfy the diagnostic criteria" of paragraph A. (Tr. 105). With respect to paragraph B, Dr. Wood noted that Plaintiff has mild limitations in her ability to understand, remember, apply information, interact with others, and concentrate, persist,

9

or maintain pace. (Tr. 105). She noted that Plaintiff has no limitations in her ability to adapt or manage oneself. (Tr. 105). As to paragraph C, Dr. Wood stated that "[e]vidence does not establish the presence of the "C Criteria." (Tr. 105). She further explained: "MDI(s) are present that could reasonably account for alleged limitations. However, the alleged level of intensity, persistence, and functionally limiting effects is not supported by the total file evidence. Allegations are not fully consistent. Limitations are not severe." (Tr. 106).[1]

In finding that Dr. Wood's opinion is persuasive, the ALJ noted that it was consistent with the objective medical evidence of record, which is supported by the ALJ's independent review of the evidence, citing the claimant's normal mood and affect and relaxed states, intact associations, logical thinking, normal speech, appropriate fund of knowledge, and no signs of inattentiveness or ideates. The ALJ noted that it was corroborated by the medical evidence. The ALJ also specifically discussed and considered the claimant's medical and treatment records following the October 25, 2018 issuance of Dr. Wood's opinion.

The limitations opined by Dr. Wood are reasonably consistent with and supported by the nature and scope of treatment received by the claimant, which indicates consistently normal mental status examination findings and improvement with her symptoms when compliant with her medication and treatment regimen. Substantial evidence supports the ALJ's determination that claimant's limitations are mild to none.

The medical evidence shows that Plaintiff attended therapy sessions at Turning Point over the course of at least fifteen months (September 2018 – December 2019). Plaintiff's therapy notes from the sessions show that her mood was often stable (Tr. 615, 617, 618, 627, 628, 629,

---

[1] To make these determinations, Dr. Wood reviewed Plaintiff's (1) July 31, 2018, visit to the LSU Health Surgical Clinic, (2) August 25-30, 2018, stay at Our Lady of the Lake due to her suicide attempt, (3) September 14, 2018, mental health exam at Baton Rouge Mental Health Center, (4) September 5, 2018, visit to Turning Point, (5) September 19, 2018, mental health exam at Turning Point; and (6) September 27, 2018, mental health exam at Baton Rouge Medical Health Center. (Tr. 103-04).

630, 730, 731, 1231). On some of those visits noting "stable" mood, the notes reflect that she was "doing well" (Tr. 625) and having a good birthday (Tr. 630). Plaintiff also received psychiatric treatment at Baton Rouge Mental Health Center and noted the following:

- September 14, 2018: Plaintiff was "attentive, communicative, casually groomed, and appear[ed] anxious." (Tr. 546). Her mood was "mildly elevated and present[ed] as hypomanic." (Tr. 546). Plaintiff exhibited symptoms of anxiety including, difficulty concentrating, and restlessness. (Tr. 542). She also exhibited the following symptoms of depression: sadness, decreased sociability, fatigue, and she expressed having crying spells. (Tr. 542).

- September 27, 2018: Plaintiff presented as calm, "friendly, attentive, communicative, casually groomed, overweight, and relaxed." (Tr. 536). Dr. Calhoun noted that Plaintiff did not show any signs of anxiety, and suicidal ideas and intentions were denied. (Tr. 537). He further noted that Plaintiff had "substantial improvement with seroquel." (Tr. 537).

- October 30, 2018: Plaintiff was placed on a 6-month treatment plan to treat her adjustment and bipolar disorder. (Tr. 554). Plaintiff was "attentive, communicative, casually groomed, and appear[ed] anxious." (Tr. 578). "Her mood [was] mildly elevated and present[ed] as [hypomanic]." (Tr. 578). Anxiety was present as evidenced by Plaintiff's restlessness and fidgetiness. (Tr. 578).

- December 17, 2018: Dr. Plaintiff's mental exam shows that she presented as calm, "friendly, attentive, communicative, casually groomed, and relaxed." Her mood presented as "normal with no signs of either depression or mood elevation." (Tr. 580).

- January 23, 2019: Plaintiff presented as "guarded, attentive, communicative, casually groomed, and tense." Her mood was "mildly elevated and present[ed] as hypomanic." She also exhibited signs of restlessness and was fidgety. (Tr. 584). During this visit Plaintiff explained that her relationships with family and friends are reduced. (Tr. 583). Plaintiff made poor eye contact during the examination. (Tr. 584).

- March 6, 2019: Although Plaintiff's mood presented as "normal with no signs of either depression or mood elevation." Dr. Anjani Narra noted that Plaintiff had "some outburst or expression of anger," and that Plaintiff "gained 20 lbs. since" the last visit. (Tr. 557). Plaintiff's weight during this visit was 280lbs. (Tr. 557).

- March 29, 2019, Plaintiff showed signs of mild depression, but she did not exhibit any signs of anxiety. She reported sleep problems and slight weight gain. (Tr. 588). Plaintiff's weight, however, was 269 lbs. (11 lbs lighter than her last visit earlier that month). (Tr. 588).

It is not the Court's role to reweigh the evidence or resolve conflicts. While de novo review could result in a different determination, our review is limited to whether the ALJ's decision is supported by substantial evidence. If it is, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000) (quoting 42 U.S.C. § 405 (g)). The Commissioner applied the correct legal standards and has provided a sufficient basis to determine that the correct legal principles were followed. Because substantial evidence supports the decision regarding plaintiff's mental health evidence, there is no error in the ultimate RFC determination and the finding that plaintiff is not disabled.

## V.    CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED,** and this matter be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on January 18, 2023.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**